451 P.2d 909

James **GARRETT** and Dorothy Garrett, on behalf of themselves and all other residents and electors of Tubac-Amado School District No. 5 of Santa Cruz County, Arizona, similarly situated, Appellants,

v.

**TUBAC–AMADO SCHOOL DISTRICT NO. 5 OF SANTA CRUZ COUNTY**, Arizona, Ed Clark, Josephine Bailey, and Ann Gahlberg, individually and as Board of Trustees, Appellees.

No. 2 CA–CIV 437.

Court of Appeals of Arizona.

March 18, 1969.

Rehearing Denied April 18, 1969.

William E. Hildebrandt, Tucson, for appellants.

E. Leigh Larson, County Atty., Santa Cruz County, Sarah Bailey, Deputy County Attorney, Nogales, for appellees.

MOLLOY, Chief Judge.

This appeal questions the propriety of a dismissal of a complaint seeking to require the trustees of the defendant school district to call a special election to determine whether a sale of the old Tubac school should be made only "to the State of Arizona or any other governmental body or agency" and to enjoin the sale of this school property until such an election is held.

There is no question raised on appeal but what the old school building at Tubac should be sold. At a special election held in this School District on July 7, 1964, the qualified electors approved, by a majority vote, proposals to move the schoolhouse away from the old building and to authorize the school board to sell the existing school site at Tubac. However, on March 8, 1967, the plaintiffs and others filed a petition with the school board, signed by more than fifteen per cent of the qualified school electors of this district, petitioning that the board call an election to determine whether the sale of this school site should be limited to the State of Arizona or some other governmental agency.

A.R.S. § 15–1302, subsec. A (2), as amended, reads as follows:

"The board of trustees of a school district may, and upon petition of fifteen per cent of the school electors as shown by the poll list at the last preceding annual school election shall, call an election for the following purposes:

"$*$ $*$ $*$ $*$ $*$ $*$

"To purchase or sell school sites or houses, or to build schoolhouses, but the authorization by vote of the district shall not necessarily specify the site to be purchased." [1]

According to the allegations of the complaint filed on March 16, 1967, the defendant school board refused to honor the petition filed and was proposing to commence public advertising for bids on this property. The trial court regarded the complaint as a "collateral attack" upon the election held in July of 1964, and, on motion, dismissed the complaint for failure to state a claim.

The appellants attack this ruling on two bases: (1) that the question asked to be presented by the 1967 petition is not the same as that voted in 1964, because the previous question was only concerned with whether the school should be sold, not whether there should be any limitations placed on prospective buyers, and (2) that the power to determine whether a school site is to be sold is vested by applicable statutes exclusively in the district electorate and there is an implied power in the electorate, as in any other vendor, to change its mind before any contract of sale has been entered. We find both contentions to be without merit.

The problem presented is one of statutory construction and we have found no judicial decision to be directly pertinent to the problem at hand. In addition to A.R.S. § 15–1302 subsec. A (2), above quoted, we have considered these statutory provisions:

A.R.S. § 15–431, subsec. A, as amended:

"The governing body of a school district shall be a board of trustees. $*$ $*$"

A.R.S. § 15–435, as amended:

"A. A school district shall in the district name, as specified in subsection B of § 15–401:

$*$ $*$ $*$ $*$ $*$ $*$

"2. Hold and convey property for the use and benefit of the district.

"B. The functions set forth in subsection A shall be performed by the trustees."

A.R.S. § 15–442, as amended:

"General Powers and Duties

"A. The board of trustees shall:

$*$ $*$ $*$ $*$ $*$ $*$

---

1. This controlling verbiage, at the times with which we are concerned, was contained within Ch. 95, Laws of 1963.

Subsequently, this statute was amended in other particulars by Laws of 1967, 3d S.S., Ch. 19.

"6. Manage and control the school property within its district.[2]

\* \* \* \* \* \*

"11. Purchase or sell school sites *when authorized by a vote of the district,* but such authorization shall not necessarily specify the site to be purchased."[3] (Emphasis added.)

This pertinent statutory law was amended by Laws of 1962, Ch. 112, § 1, which added the following discretionary power to A.R.S. § 15–442, subsec. B:

"B. The board may:

\* \* \* \* \* \*

"8. Sell to the state, county or city *any* school property required for a public purpose, provided the sale of the property will not affect the normal operations of a school within the school district." (Emphasis added.) A.R.S. § 15–442, as amended.

▆ As we read these statutes, they vest plenary power in the board of trustees to govern the affairs of the school district, subject only to various statutory limitations. Generally, without statutory limitation, the power of the governing body of a school district to act for the district is recognized. *See* 78 C.J.S. Schools and School Districts § 120, at p. 905, and § 244 b, at p. 1202. Some statutes vest ultimate control over the business of the district in the electorate, and when such is the case, the power of the electorate must be recognized. *See* State ex rel. Wiedenhoft v. Anderson, 248 Wis. 566, 22 N.W.2d 516 (1946). But the inverse is true here; control is vested in the board, subject only to securing approval from the electorate to exercise certain powers.

▆▆ This being the law, at the time of the July, 1964, election, it seems clear that the school board had the power to sell this school site, in pursuance of A.R.S. § 15–442, subsec. B(8), above quoted, to "\* \* \* the state, county or city \* \* \*" without a vote of the electors of the district, once this property was no longer needed for school operations. We arrive at this conclusion from the fact that there is no limitation upon the categorically expressed authority of the 1962 amendment. The board already had general control pertaining to the property of the school district, *see* above-quoted statutes, and, if the 1962 amendment were to be construed as applying only to personalty, or to a sale of a school site only when authorized by vote of the electorate, the amendment would have little meaning. It is a basic rule of statutory construction to assume that new legislation is not redundant and trivial. State v. Edwards, 103 Ariz. 487, 489, 446 P.2d 1, 3 (1968).

In order to sell to any buyer, other than the state, county or city, the school board needed, because of the implied limitation contained within § 15–442, subsec. A (11), quoted *supra,* authority from the electorate. This it secured in the July, 1964, election. While this vote did not state that the manner of sale and selection of a buyer were left to the discretion of the school board, we believe it necessarily implicit in the verbiage of the question presented:

"Shall the Board of Trustees \* \* \* be authorized and empowered to sell the existing school site, \* \* \* in the Town of Tubac, in the event the school buildings are changed from their present location to the new school site in the school district?"

If the electorate may now place a limitation upon the types of persons to which this property may be sold, then there are an infinite number of other limitations that can be proposed, *i. e.,* as to price and terms of sale, any of which would limit authority previously granted. We find no provision

---

2. This subsection was placed in § 15–442 by Laws of 1967, 3d S.S., Ch. 19, § 1, but an identical provision was previously a part of § 15–445, as subsection A (1).

3. This subsection was placed in § 15–442, where it is now found, by Laws of 1967, 3d S.S., Ch. 19, § 1, but an identical provision was previously a part of § 15–445 as subsection A(6), where it was placed by Laws of 1958, Ch. 29, § 1.

in these laws permitting such limitation and the remaining question is whether there is implied power to partially rescind authority previously granted.

Though we have found no authority dealing with an election to authorize the sale of real estate, we believe, by analogy, that cases dealing with authorization votes for issuance of school district bonds or to condemn property are helpful. The most comprehensive annotation of cases in this particular area of our law is found at 68 A.L.R.2d 1041 et seq., entitled "Rescission of vote authorizing school district or other municipal bond issue, expenditure, or tax."

The cases dealing with this entitled problem have divided in their solution, the dividing line running between the manner of the taking of the vote of approval. In those cases in which there was a vote of the electorate by means of a town or school district meeting, uniformly the courts have held that the vote of such meeting may be rescinded at a subsequent meeting, unless there has been action taken in reliance upon the first vote. Cases falling in this category, and relied upon by the appellants, are: Hibbs v. Board of Directors of Adams, etc., 110 Iowa 306, 81 N.W. 584, 48 L.R.A. 535 (1900); State v. Umbarger, 69 Kan. 66, 76 P. 429 (1904); Adams v. Cook, 245 Mass. 543, 139 N.E. 803 (1923); and Denicore v. City of Burlington, 116 Vt. 138, 70 A.2d 582 (1950).

When the vote has been taken as the result of an election, at which formal ballots are cast, all cases called to our attention have held that the electorate may not rescind its previous action. Cases falling in this category are: Goedde v. Community Unit Sch. Dist. No. 7, Macoupin Co., 21 Ill.App.2d 79, 157 N.E.2d 266 (1959); Schmiedeskamp v. Board of Trustees of Sch. Dist. No. 24, Yellowstone Co., 128 Mont. 493, 278 P.2d 584, 68 A.L.R.2d 1035 (1955); Custer City v. Robinson, 79 S.D. 91, 108 N.W.2d 211 (1961); and Henderson v. Hoesley, 225 Wis. 596, 275 N.W. 443 (1937).

It is true that, in all of these last-cited cases, more had been done to implement the authority granted at the polls than apparently has been done here, i. e., in *Goedde, supra,* the plaintiff was an architect seeking a declaration that a second election, that had purportedly rescinded a prior vote to issue improvement bonds, was a nullity. In reliance on the first vote of approval, the defendant school board had entered into a contract with the plaintiff for architectural services. However, the rationale of this decision, holding the second election void, pays no heed to plaintiffs' contract entered in reliance on the first vote. If right of rescission were otherwise to be recognized in the electorate, it seems probable that this Illinois court, and other courts faced with similar problems, would have set about righting the specific wrongs resulting from reliance on the first vote, rather than upholding the authority to issue bonds vastly greater in amount than any damage resulting from such reliance. Therefore, we believe the true line of demarcation between the two lines of cases we have cited to be the fact that, in the first, the vote was taken at district meetings of the voters, while in the second, the vote was by ballot at a formal election.

This rationale for this dividing line is stated in a note to the A.L.R. annotation above cited, which points out that town or district meetings are legislative in character and hence it is more appropriate to consider any action taken at such a meeting as being one that may be rescinded by the same legislative body:

> "Such municipal organizations approach a 'pure democracy' in which the voters as a whole in effect also constitute the legislature of the body in question, and the cases can probably be validly distinguished on this ground, since there is presumably no doubt of the right of a legislature to repeal previous legislation in the absence of intervening rights."

68 A.L.R.2d, n. 4, at 1042.

A decision of our Supreme Court gives us some guidance. In Howard v. Luke, 18

Ariz. 563, 164 P. 439 (1917), our Supreme Court was concerned with the validity of an election authorizing the issuance of bonds for school buildings. The attack was made in a suit against the board of supervisors to restrain the issuance of the bonds. The court, in upholding the denial of the injunction by the trial court, said:

> "If the school election here challenged as illegal is to be set aside, it must be by some direct proceeding. Its legality or regularity cannot be impugned or questioned collaterally. Its record of the election and the proceedings in connection therewith speak verity in all proceedings, except it be one brought directly to determine the question of its validity or correctness."

18 Ariz. at 567, 164 p. at 441.

The *Howard* decision is obviously not in point here, because this is not an attempt to challenge the "regularity" of the election held in 1964, but rather to hold a new election to change the result of the last. However, in holding that the result of an election may not be "collaterally" attacked, we believe our Supreme Court is recognizing that results of a formal election have a degree of dignity comparable in some degree to a judicial decision.

There is no contention made in this case that the authority granted by the vote of July, 1964, has expired by reason of failure to act within a reasonable time after the granting of authority. The only contention advanced to merit reversal is that there is the inherent right in the electorate to change its mind. Generally, in matters pertaining to elections, this is simply not so. In holding that there is no implied power in school district voters to rescind a previous vote authorizing a bond issue, one court has said:

> "As well may it be implied that power to vote for or against a person for office

confers the power to rescind his election regularly made by a subsequent vote of voters." Orr v. Marrs, 47 S.W.2d 440, 442–443 (Tex.Civ.App.1932), error dismissed, 122 Tex. 53, 52 S.W.2d 53 (1932).

To uphold the contention advanced is to lay down law that would permit a minority of the electors in any school district to periodically call up for a new vote a matter decided by a previous vote. There is no limitation suggested by the appellants as to how soon or how many times this might be done. Though in this case, the school district with which we are concerned is relatively sparsely populated, so that the expense of holding another election would not be great, and though the number of petitioning electors is a majority of all of the electors in this district, the rule of law that we are asked to adopt would apply to all school districts in the state, and to any petition filed under A.R.S. § 15–1302 by fifteen per cent or more of the electorate. Many of our school districts are heavily populated and the cost of elections is substantial. We believe it to be in the best interest of school districts generally that we follow what we conceive to be the majority law in holding that petitions such as this do not have the mandatory effect that would otherwise be the case if there had been no previous vote on a question which included the question now sought to be put to the electorate.

Judgment affirmed.

KRUCKER, J., and LAWRENCE HOWARD, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge LAW-. RENCE HOWARD was called to sit in his stead and participate in the determination of this decision.