470 P.2d 115

E. G. BURNKRANT, Superintendent of the Scottsdale Union High School District, and John Doe Davis, Principal of Saguaro High School, Scottsdale, Arizona, Appellants,

v.

Marilyn H. SAGGAU, Guardian ad litem of Kent Saggau, a minor, Appellee.

No. I CA–CIV 1133.

Court of Appeals of Arizona,
Division 1,
Department B.

June 4, 1970.

Moise Berger, Maricopa County Atty., by Alice A. Wright, Deputy County Atty., Phoenix, for appellants.

Wolfe, Rosen & Harris, by Irwin Harris, Phoenix, for appellee.

HAIRE, Judge.

This appeal in a mandamus proceeding requires us to determine whether a student was lawfully suspended from high school.

The student involved is appellee's minor son, Kent Saggau. Kent was 15 years of age and a student at Saguaro High School

in Scottsdale during the semester nearing completion in May 1969. On May 8, 1969, a teacher at Saguaro High reported that Kent had been found in possession of a partially smoked cigarette on the school premises. This was Kent's second such offense, the first having occurred in March 1969. On May 9, 1969, an order was signed suspending Kent from school for the balance of the semester. The order was made pursuant to the following regulation, which was promulgated by school authorities and which was printed in the "1968–69 Saguaro High School Student Handbook", which was distributed to students:

"SMOKING: Smoking or possession of tobacco on campus during the school day or during any school sponsored activity is a misdemeanor. The penalty shall be a five (5) day suspension for the first offense, and expulsion for the semester for a second offense. No credit will be given if a student is expelled."

The suspension order was made and signed by Fred H. Pratt, a part-time teacher and part-time "administrative assistant" at Saguaro High. In his administrative capacity, in which he was acting at the time, Pratt was subordinate to George A. Goldey, Assistant Principal in charge of student activity, and to Ray J. Davis, the Principal of Saguaro High. Pratt's administrative duties consisted of assisting Goldey with disciplinary matters. In connection with these duties, Pratt had been orally authorized by Principal Davis to suspend students for violations of school rules such as that set forth above. Principal Davis did not participate in the suspension proceedings involving Kent Saggau, although he testified at the hearing in the trial court that he approved of Pratt's action in the matter.

A few days after the suspension, appellee commenced the present mandamus action in the Superior Court, asserting a wrongful suspension and seeking Kent's immediate readmittance to school and an opportunity to complete the academic year with full regular credit. After a hearing, the writ was granted, the trial judge indicating in his remarks from the bench his view that (1) suspension by order of a person other than the principal was invalid under A.R.S. § 15–204, set forth *infra*, and (2) that suspension was an arbitrarily excessive punishment under the circumstances. In compliance with the terms of the writ, the appellant school authorities subsequently filed the following "RETURN TO WRIT OF MANDAMUS" in the trial court:

"COME NOW the defendants abovenamed and in obedience to the directions of the Writ of Mandamus state as follows:

"That the minor child, Kent Saggau, has been readmitted as a full-time student at Saguaro High School and allowed to take final examinations in his class subjects. *That the records of the school will show that the academic credit received by Kent Saggau for such subjects may be withheld if the judgment of this Court is reversed on appeal.*" (Emphasis added.)

We find three basic questions presented. First, is the controversy moot? Second, was the remedy of mandamus available to appellee, or was she first required to pursue administrative remedies? Third, was there a proper legal basis for the trial court's decision? We will consider these questions in that order.

 Appellee moved to dismiss the appeal on the ground that the cause is moot. The precise thrust of appellee's argument is not entirely clear, but the point is made that Kent Saggau has by virtue of the school authorities' compliance with the writ successfully completed the school year in question, and gone on to and mostly through the next grade. It is suggested that in view of the cumulatively progressive nature of a public school eduucation, it would be a great hardship upon Kent Saggau to permit the school authorities to deprive him of the credits earned. It is also contended that the school's right to withhold the credits in question upon reversal on appeal was never raised in

the trial court, and cannot therefore supply the spark of life to a dead controversy.

Appellee has not carried the burden of persuading us that the school authorities are denied an effective right of appeal in a case of this nature. As the underscored portion of appellants' "RETURN" to the writ of mandamus indicates, their compliance with the writ was not irreversible in ultimate effect. There is no contention by appellee that the school authorities could not deny credits to a person lawfully suspended, with or without the express provisions of the regulation and "RETURN" before us here, or that the judgment of the trial court, even if erroneous, *ipso facto* rendered the suspension proceedings a nullity. The school authorities can hardly be faulted for their prompt compliance with the writ, which was their only lawful course of conduct and which accorded to Kent Saggau the fruits of his victory, if upheld. Nor was it incumbent upon the school authorities to litigate in the trial court the possible ultimate effects of an appeal, if (as of that time) one were taken. Mootness generally derives from the "abstract" or "academic" nature of the issues presented on appeal. See 5 Am.Jur.2d Appeal and Error § 762 (1962). Appellee has not cited any authority indicating that *hardship* to the appellee renders a controversy moot.

On the other hand, we are aware of authorities which hold, in effect, that compliance with a judgment for specific relief can defeat an appeal where the compliance is such that it would be impossible in the event of reversal to restore the status quo. See Annot. 39 A.L.R.2d 153, 183–85 (1955). If such a principle could redound to the benefit of appellee and her student son, they have not advised us of the workings of the school system and precisely how it could or should work to their benefit in this case. Where a right to appeal is given, as it is here, see A.R.S. § 12–2101, subsec. B,[1] the law will seek to uphold it. *Cf.* Davis v. Campbell, 24 Ariz. 77, 80, 206 P. 1078, 1079

(1922). Even if the school authorities' action in complying with the writ were inherently irreversible, we might still determine the questions raised in view of their public importance. See Wise v. First National Bank, 49 Ariz. 146, 65 P.2d 1154 (1937). The motion to dismiss the appeal is denied.

■ The school authorities argue that appellee was required to exhaust her remedies within the administrative framework of the school system before bringing the controversy into the courts. In advancing this contention, appellants point to testimony of the principal, Mr. Davis, stating that a student or parent aggrieved by an order of (for example) Mr. Goldey could appeal "to me", then to the superintendent of the school district, and finally to the Board of Education. Nowhere, however, is there any indication that the appellate system suggested by this testimony or any of appellants' other testimony has been formalized or reduced to writing and made available to persons who might wish to make use of it.

We agree with appellants that as a general rule, a person must exhaust administrative remedies before seeking relief in court. Morris v. Woolery, 103 Ariz. 392, 442 P.2d 839 (1968); Campbell v. Chatwin, 102 Ariz. 251, 428 P.2d 108 (1967). But this rule presupposes an adequate and clearly *ascertainable* administrative remedy. Manifestly there can be no such remedy in a system which rests in parol. *Cf.* People ex rel. Lamme v. Buckland, 84 Colo. 240, 269 P. 15 (1928). As for the form of action selected by appellee, it is "* * * conceded generally that the remedy for the unlawful expulsion or suspension of a pupil from school is by mandamus to compel the school authorities to allow the pupil to attend school." Annot., 39 A.L. R. 1019 at 1019–1020 (1925). The remedy selected by appellee was neither premature nor improper.

1. And see State Board of Barber Examiners v. Walker, 67 Ariz. 156, 166, 192 P.2d 723, 730 (1948).

This brings us to the merits. A.R.S. § 15–204, critical here, reads as follows:

"Authority to suspend pupil

"A. In schools employing a superintendent or a principal, the authority to suspend a pupil from school is vested in the superintendent or principal.

"B. In schools which do not have a superintendent or principal, a teacher may suspend a pupil from school.

"C. In all cases of suspension, it shall be for good cause and shall be reported within five days to the board of trustees by the person imposing it."

Preliminarily, we note that this statute refers to the authority to *suspend* a pupil, and that the particular school rule under which action was taken against Kent Saggau describes the second-offense penalty as *"expulsion* for the semester". (Emphasis added.) Although the regulation refers to expulsion "for a second offense", the evidence indicates that the regulation had been revised so as to refer to "suspension" for a second offense. The difference between expulsion and suspension is illustrated by the following excerpt from the testimony:

"A A suspension is for a definite period of time, for the balance of a semester, four or five days. Expulsion is indefinite severance from contact with the school.

"Q So if the child would have been expelled, he would have to reapply for admission to the school, is that correct?

"A Through the school board, right.

"Q. Where as a child who had been suspended could return to school at the end of a period of his suspension as a matter of course, is that correct?

"A That's correct."

Several Arizona statutes deal with "expulsion" and are not discussed herein.[2]

Cases from other jurisdictions draw a distinction as to whether there is a temporary privation (suspension), or a permanent severance from the group, institution, or society (expulsion).[3] Both parties to this appeal have, correctly in our view, recognized this distinction, and they have both treated the order affecting Kent Saggau as one of suspension, rather than expulsion.

The question is thus whether, in a school which employs a principal, the power to suspend a pupil can be exercised by one other than the principal. Because of the provisions of A.R.S. § 15–204 (quoted supra) we are constrained to hold that it cannot.

The plain terms of the statute itself are decisive. Subsection A of the statute, vesting "the authority to suspend a pupil" in the principal (in a school which employs one) is clear enough. But if a delegation argument is not foreclosed by that provision, viewed in isolation, it is clearly precluded when the provisions of subsection B are concurrently considered. Subsection B grants a "teacher" the authority to suspend a student from school in the limited situation where the school has no superintendent or principal. It is clear from the two subsections that the legislature regarded suspension of a pupil as a serious measure, to be imposed only by the higher school official where one is employed. The provisions of subsection C of the statute reinforce this assessment of legislative intent.

The fact that Mr. Pratt was acting in a capacity of administrative assistant rather than in his teaching capacity when he signed the order suspending Kent Saggau has no validating effect. The effect of A.R.S. § 15–204 is to vest the power to suspend exclusively in a superintendent or principal, where one is employed in a school. Nor do we think that a principal's subsequent approval or ratification of his subordinate's *accomplished act* of purport-

2. See A.R.S. §§ 15–305, 15–446 and 15–442, subsec. B, par. 1.

3. See John B. Stetson Univ. v. Hunt, 88 Fla. 510, 102 So. 637 (1924); Palmetto Lodge No. 5, I.O.O.F. v. Hubbell, 2 Strob. 457, 49 Am.Dec. 604 (S.C.1848); Lowery v. Int'l Bhd. of Boilermakers, 241 Miss. 458, 130 So.2d 831 (1961).

ed suspension can fulfill the plain intent of the statute. A contrary holding would effectively sanction a *de facto* transfer of the authority to suspend notwithstanding the legislative mandate. Compare Benites v. Industrial Commission, 105 Ariz. 517, 467 P.2d 911, (filed April 13, 1970). However, this is not to say that the formal order of suspension signed by the principal could not be based upon the recommendation of other school personnel. There is no question here but that the purportedly operative order of suspension was made and entered by Mr. Pratt, as *his* act; the truth of that fact is dramatized by Principal Davis' testimony that an aggrieved student could in a similar situation "appeal" to him.

Nothing herein is to be considered as limiting the power of teachers or other school personnel to take appropriate prophylactic or disciplinary measure under extraordinary circumstances or in an emergency which demands "on the spot" action. However, if formal suspension is to be the result, then such formal suspension can only be implemented by personnel given that authority by the controlling statute.

There being a sound basis for sustaining the judgment of the trial court, there is no occasion for us to consider the further conclusion reached by the trial judge that suspension from school was an excessive and arbitrary penalty under the circumstances. We state only that while courts do possess a limited species of ultimate power to review the reasonableness of school disciplinary regulations and action taken thereunder, they are not "super school boards"— the government of the schools has been vested by the legislature in boards of trustees[4] and boards of education,[5] and if there exists a reasonable basis for rules made and actions taken, the same must be upheld. We note in this connection that the trial judge's remarks on the subject in his ruling from the bench failed to include a reference to the fact that it is a misdemeanor in Arizona for a minor to

have cigarettes or smoking tobacco in his possession. A.R.S. § 13–844.

Judgment affirmed.

JACOBSON, J., concurs.

EUBANK, Judge (dissenting).

I concur with the majority opinion on the question of mootness, but would reverse the trial court's action on the basis that the appellee should be required to exhaust his administrative remedies before the high school Board of Education before petitioning the courts for relief.

The maintenance of good conduct by a school district, through its agents, is of prime importance if an orderly process of education is to be achieved. The day-to-day problems of discipline, including suspension and expulsion of pupils, are vested by law in the Boards of Trustees and Boards of Education of the local school districts and their employees and the courts should use great caution and restraint before injecting the power of the court between the School Boards, which bear the legal responsibility for the conduct of local education, and the pupils who are present in the school district to be educated.

The Arizona Constitution requires the legislature to enact laws establishing and maintaining a general and uniform public school system. Ariz.Const. art. 11, § 1, A.R.S. It also requires that the "general conduct and supervision" of the system be placed in such governing boards as may be provided by law. Ariz.Const. art. 11, § 2. A high school is specifically designated as one educational unit in the general and uniform system. Ariz.Const. art. 11, § 1. The legislature in response to the constitutional mandate enacted A.R.S. § 15–541, which designates the Board of Education as the "governing board" of a high school district. They endowed the Board of Education with all the powers and duties vested in the common school trustees, A.R.S. § 15–545. One of these powers and duties is

---

4. A.R.S. §§ 15–431 and 15–441.

5. A.R.S. §§ 15–541 and 15–545.

that they " * * * shall prescribe and enforce rules for the government of the schools, not inconsistent with law or rules prescribed by the state board of education." A.R.S. § 15–441. The record fails to reveal any applicable state board regulations in respect to appeals from disciplinary action. Pursuant to A.R.S. § 15–441, the Board of Education, appellants herein, enacted the rule involved in this cause. It reads:

> "SMOKING: Smoking or possession of tobacco on campus during the school day or during any school sponsored activity is a misdemeanor. The penalty shall be a five (5) day suspension for the first offense, and expulsion for the semester for a second offense. No credit will be given if a student is expelled."

This rule is obviously based upon a criminal statute, A.R.S. § 13–844, which reads:

> "A person who sells, gives or furnishes cigars, cigarettes or cigarette papers, smoking or chewing tobacco, to a minor, and a minor who buys, or has in his possession or accepts or receives from any person, cigars, cigarettes or cigarette papers, smoking or chewing tobacco of any kind, is guilty of a misdemeanor punishable by a fine of not less than ten nor more than one hundred dollars."

and on A.R.S. § 13–821, subsecs. A, par. 1 (p) and B, and § 13–822, which define a "[d]ependent person" as one under the age of 18 years "[w]ho * * * habitually smokes cigarettes", and defines a "[d]elinquent person" as one under the age of 18 years who violates a law of this state. The rule being in conformity with the announced public policy of the state certainly cannot be said to be either unreasonable or unnecessary for the education of our youth. See 78 C.J.S. Schools and School Districts § 120 at 905–908 (1952); Annot., 33 A.L.R. 1180 (1924).

The foregoing citation of constitutional and statutory authority shows, and we have held in Garrett v. Tubac-Amado School District No. 5, 9 Ariz.App. 331, 451 P.2d 909 (1969), that the law vests plenary power in the Board of Trustees, and in this case the Board of Education, to govern the affairs of the school district, subject only to statutory limitations. Such plenary power requires that the Boards maintain good order, discipline, and a respect for the laws of this state and nation, as a minimum obligation to their elected office. See 47 Am.Jur. Schools § 178 (1943).

The majority opinion rejects the exhaustion of administrative remedies argument of the appellant School District on the basis that there is no adequate and clearly ascertainable administrative remedy in existence. I disagree. As I have attempted to point out above, the High School District for all practical purposes is the Board of Education. All other persons connected to the District are employees of the District and, in effect, work for the Board. The Boards are vested with the power to hire and terminate personnel and set the rules for the government of the District. The final word on expulsion can only be given by the Board. A.R.S § 15–442, subsec. B, par. 1. It is only the Board that is entitled to receive the legal advice and services of the County Attorney, A.R.S. § 11–532, subsec. A, par. 10, or the Attorney General, under certain limited circumstances. Consequently, it seems clear that any student protesting unfair treatment by a teacher or an unfair or illegal suspension by a principal or superintendent or other employee of the Board should be required to first petition that Board, in which the legislature has vested the plenary power and the full responsibility for governing the affairs of the school district, for a hearing and review of the matter prior to the judiciary assuming the role and function of the Board of Education as was done in this case. See 79 C.J.S. Schools and School Districts § 503 c at 451 (1952).

The record shows that the Board was completely bypassed by the events that oc-

curred. In essence the trial court became, for all purposes, the Board of Education and exercised the Board's plenary power over the school district in this purely disciplinary matter. There is certainly no presumption at law that the Board would not comply with the law or that it would not do its duty. The presumption is otherwise.

I would hold that an aggrieved pupil suspended or expelled under a reasonable regulation enacted by the Board of Education, for the violation of a regulation should first petition the Board for relief prior to seeking relief from the courts.

I would reverse.