490 P.2d 836

Earl V. KELLY, as Principal, et al.,
Appellants,

v.

Randall Eugene MARTIN, by and through
his Guardian ad Litem, Robert
Martin, Appellee.

No. 2 CA–CIV 1021.

Court of Appeals of Arizona,
Division 2.

Nov. 24, 1971.

Rehearing Denied Dec. 23, 1971.

Review Denied Jan. 25, 1972.

Rose Silver, Pima County Atty., Lawrence Ollason, Sp. Deputy County Atty., Tucson, for appellants.

Kali & Allen, by Kenneth L. Allen, Tucson, for appellee.

KRUCKER, Chief Judge.

This appeal brings up for review a superior court order entered in a special action challenging a school expulsion order.

The petition, filed below, alleged that on November 24, Randall Martin, a student at Sahuarita High School, was expelled by the School Superintendent and School Board of Sahuarita School District No. 30. It further alleged that the expulsion order was entered without a proper hearing, hence was violative of procedural due process requirements, and that the Board's action was arbitrary and capricious for one or more of the following reasons:

"1. That due process of law has not been afforded the plaintiff by affording him the opportunity of full, impartial and fair hearing at which time he would be afforded the opportunity of confrontation of witnesses, croxx-examination [sic] and the presentation of evidence to a school board sitting quasi judicial [sic] capacity.

2. That the order of the School Board expelling plaintiff is beyond its jurisdiction and in violation of the law inasmuch as the Juvenile Court has begun to act upon the charges leveled against the plaintiff which precludes defendant's further action.

3. That the order of the School Board totally ignores requirement of the State Legislature under § 15–305, A.R.S. that the conduct authorizing expulsion be continued or habitual.

4. That the order of the School Board totally ignores the responsibility of a School Board to the individual student and the parent and the opportunity of the parent to participate in the discipline of the individual student.

5. That the action of the School Board in light of the past history of the plaintiff and the facts of this case is harsh and oppressive and beyond the legal authority of said Board members."

The trial court entered an order directing reinstatement of Randall Martin to full-time status as a student at Sahuarita High School and that the defendants appear on the designated date to show cause why such order of reinstatement not be made permanent *pendente lite*. The defendants filed a motion to quash the order to show cause on the ground that they had set January 5, 1971 for a hearing concerning the conduct and actions of Randall Martin, who would be allowed to attend school until the Board reached a decision following the hearing.

Upon hearing the plaintiff's petition and the defendants' motion to quash, and upon stipulation of counsel for the respective parties, a court order was entered on January 15, 1971, directing that the defendants continue the reinstatement and readmission of the plaintiff until twenty days after a hearing and determination concerning the expulsion and/or suspension of Martin. The court further ordered that plaintiff's counsel be given ten days written notice as to the time and place of said hearing, at which a certified court reporter was to be present and that plaintiff's counsel be furnished with a transcript of the hearing for use in the special action proceeding in the event the Board decided in favor of expulsion and/or suspension. (This formal order was entered pursuant to a prior minute entry order of December 28, 1970.) The appropriate written notice was given to plaintiff's counsel, the hearing was conducted, and a transcript thereof furnished as per the court order. (At the conclusion of the hearing, expulsion was ordered.)

The matter was submitted to the trial court on the pleadings, transcript of the hearing, and memoranda submitted by the respective parties. The court concluded that the School Board's action was arbitrary and an abuse of discretion. It directed that the expulsion order be set aside, that the defendants be permanently enjoined from taking further sanctions against Randall Martin for the acts which resulted in his expulsion, and that he be suspended only for the remainder of the first semester and be granted credit for all courses finished. This appeal followed.

It is generally recognized that with respect to discipline of students in public educational institutions involving the possible imposition of serious sanctions such as suspension or expulsion, the requirements of procedural due process under the Fourteenth Amendment are applicable. Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); Annot. 58 A.L.R.2d 903 (1958); "Developments in the Law—Academic Freedom," 81 Harv.L.Rev. 1045, 1134–1143 (1968). These procedural due process requirements are applicable to a student attending a public high school. Kelley v. Metropolitan County Board of Education of Nashville, etc., 293 F.Supp. 485 (M.D. Tenn.1968). Here, however, procedural process was satisfied. The requisite hearing was conducted and the student, represented by counsel, was afforded an opportunity to present witnesses in his own behalf and to cross-examine adverse witnesses. The gravamen of his complaint, as we see it, was "that the expulsion of a first-offense student without prior record or bad conduct is harsh and oppressive and beyond the standards as set forth by the Arizona State Legislature under § 15–442, as amended, A.R.S."

A.R.S. § 15–431, as amended, designates the Board of Trustees as the governing body of a school district. The Board is authorized to prescribe and enforce rules for the government of the schools, not inconsistent with law or rules prescribed by the State Board of Education. A.R.S. § 15–441, as amended. Subsection B of A.R.S. § 15–442, as amended, vests the Board with discretion to expel pupils for misconduct. Pursuant to its rule-making power, the Board of Trustees of Sahuarita School District No. 30 promulgated various rules and regulations, including the following:

\* \* \* \* \* \*

"2. *Conduct expected of all persons on or using school district property.* All persons using or upon school district property for any purpose shall not engage in:

\* \* \* \* \* \*

E. Unlawful use, possession, distribution or sale of drugs, alcohol, and other illegal contraband on school district property or at school-sponsored functions.

\* \* \* \* \* \*

5. *Conduct of students.*

\* \* \* \* \* \*

C. Any student who violates these rules and regulations may be subject to warning, reprimand, probation, suspension or expulsion, in addition to other civil and criminal prosecution. These punishments may be in addition to any customary discipline which the school district presently dispenses."

We have consistently recognized that the legislature has delegated to the governing board of a high school district the control of the affairs of the district, subject to certain statutory controls. Quimby v. School District No. 21 of Pinal County, 10 Ariz.App., 69, 455 P.2d 1019 (1969); Garrett v. Tubac-Amado School District No. 5, 9 Ariz.App. 331, 451 P.2d 909 (1969); Board of Education, Tucson H. S. District No. 1 v. Williams, 1 Ariz.App. 389, 403 P.2d 324 (1965). However, we have also recognized that courts possess a limited species of power to review the reasonableness of school disciplinary regulations and actions taken thereunder in the case of Burnkrant v. Saggau, 12 Ariz.App. 310, 470 P.2d 115 (1970). We stated:

" \* \* \* they are not 'super school boards'—the government of the schools has been vested by the legislature in boards of trustees and boards of education, and if there exists a reasonable basis for rules made and actions taken, the same must be upheld." 12 Ariz.App. at 314, 470 P.2d at 119.

The incident which gave rise to Randy Martin's expulsion occurred on November 20, 1970, at Sahuarita High School. The principal testified as follows about the con-

dition of various students in school. One youngster looked as though he had passed out, his eyes were "spinning" and when the principal asked him to get up, he "staggered." and then the principal had to physically lead him all the way to the nurse's office. Another student was "stammering" and "not walking quite straight." After leaving this student at the nurse's office, the principal discovered another boy "running around acting very, very strangely" and when the principal spoke to him, he too appeared "not normal" and stammered. Also, two girls were reported missing from their respective classes—one was found in the girls' rest room, hysterical and crying; the other was found in another room sitting on the floor. Both girls were sent to the nurse's office.

Both the testimony of the principal and that of a Pima County deputy sheriff supports a finding that Randy Martin supplied drugs to the students.[1] The deputy sheriff testified that Randy led him to a cache of drugs buried in the desert approximately a mile and a half from the school. According to the officer, Randy told him that he had gone to the area at noon with another classmate. The deputy, accompanied by Randy, went to the classmate's home and, after advising him of his *Miranda* rights, asked him some questions. The classmate would not tell the officer where the drugs came from, after being shown the desert cache, and the officer was of the opinion that he appeared to be under the influence of drugs.

According to the principal, he recommended the Board take strong action for the following reason:

"This is the first incident that we have knowingly had where the children were, as the expression goes, hopping out in school, and I believe that we needed to take what I would determine fairly drastic actions."

He also testified that he was fairly well-acquainted with the drug problem, having been an administrator in California schools. When questioned as to whether, during the four years that he had been principal at Sahuarita High School, there had been any other incidents involving drugs, he responded:

"A. There was one other incident now. I cannot name the date.

Q. There was another incident?

A. There was an incident about three years ago where I found out that a boy had passed a pill to another boy, and I repossessed that and the person passing the pill happened to be on probation, and I reported the incident and his probation was revoked.

Q. He was on probation with law enforcement authorities?

A. Yes.

Q. And was he taken out of school?

A. I believe the deputy picked him up right after school that night and he was put—what is it, Mother Higgens.

Q. Yes. Do you recall—no, I'm sorry. I was thinking you put him on probation. I'm sorry.

A. No. There was no need to act there.

Q. Because there was [sic] other officials involved?

A. Yes."

According to the principal, Randy was a comparative newcomer to the high school, having enrolled just two months previously. He vaguely recalled another incident in which about ten boys, including Randy, were smoking in the restroom. The record reflects that as to the other students who were involved in the November 20th incident, the principal recommended only suspension. When questioned about the more

---

1. The principal testified that Randy turned over to him, upon request, pills commonly known as Yellow Jackets and Rainbows.

These pills, a derivative of barbituric acid, are considered "downers."

drastic remedy of expulsion in Randy's case, the principal stated:

"Q. And you took the lesser of the two evils of suspension or expulsion with those students. May I ask you, in your opinion, why you made that decision?

A. Yes, because in my way of thinking, there's a difference between a child who takes the drugs and who who supplies them.

Q. So it was your opinion that Randy was a supplier or pusher of drugs?

A. It was my opinion that Randy was the one who had supplied the drugs and passed them out to the other children that day, yes."

The principal also testified that, in making his recommendation to the Board as to the respective students involved in this incident, he did consider their records, past behavior, and conferences with their parents. On cross-examination by Randy's attorney, the principal indicated that he had considered other factors in making his recommendation as to Randy since there are two degrees of expulsion and he could have recommended permanent expulsion.[2]

■ We do not doubt the reasonableness of the regulation concerning drugs. The use of drugs by students, either on or off the high school premises, bears a reasonable relation to and may endanger the health, safety and morals of other students. Howard v. Clark, 59 Misc.2d 327, 299 N.Y. S.2d 65 (1969). The Board of Trustees of Sahuarita School District No. 30 is authorized by statute to expel students for misconduct. In the absence of a manifest abuse of discretion, fraud or collusion, courts do not interfere with the school board's resolution of any question within its discretion. State ex rel. Fleetwood v. Board of Education, 20 Ohio App.2d 154, 252 N.E.2d 318 (1969); Stanley v. Gary, 237 S.C. 237, 116 S.E.2d 843 (1960); 79

C.J.S. Schools and School Districts § 503 (c); 47 Am.Jur. Schools § 181. In determining whether its decision is reasonable as distinguished from fraudulent, arbitrary or capricious, its action is measured by the standards set by reason and reasonable people, bearing in mind that such a standard may permit a difference of opinion on the same subject. Arthur v. Oceanside-Carlsbad Junior College District, 216 Cal.App.2d 656, 31 Cal.Rptr. 177 (1963).

■ The school officials, as a body and individually, have a responsibility for maintaining order upon the school premises so that the education, teaching and training of the students may be accomplished in an atmosphere of law and order. In measuring the reasonableness of an expulsion, courts must give credence to the role and purpose of the schools and the means available to school administrators to deal with their problems.

■ A student may be suspended or expelled for behavior inimicable to the welfare of other students. In re Donaldson, 269 Cal.App.2d 509, 75 Cal.Rptr. 220 (1969). Here, the School Board, in recognizing the dangerous condition created on school premises by the possession thereon of drugs, enacted a rule proscribing such conduct for the protection of the pupils.[3] We are all aware of the fact that the schools of today are beset with problems of drug abuse and therefore are unable to say that the School Board abused its discretion in imposing the severe sanction of expulsion on a student who distributed drugs to fellow students. As stated in Stevenson v. Wheeler County Board of Education, 306 F.Supp. 97 (S.D.Ga.1969), affirmed at 426 F.2d 1154 (5 Cir., 1970):

"By accepting an education at public expense pupils at the elementary or high school level subject themselves to considerable discretion on the part of school

---

**2.** Although the expulsion order is not part of the record on appeal, the hearing transcript indicates that the expulsion was for the school year as the student's attorney argued to the Board:

"Randy made a mistake. Six other kids made a mistake, Randy loses a

year of his life because that means one year longer for school, if he can get in school."

**3.** In California the legislature has accomplished this. *See*, § 10603 of the Education Code.

**12**

authorities as to the manner in which they deport themselves. Those who run public schools should be the judges in such matters, not the courts. The quicker judges get out of the business of running schools the better. * * * Except in extreme cases the judgment of school officials should be final in applying a regulation to an individual case."

Since there was evidentiary support for the School Board's action, the trial court erroneously substituted its judgment therefor. Accordingly, the judgment below is reversed with directions to enter judgment in favor of the appellants.

HATHAWAY and HOWARD, JJ., concur.