501 P.2d 1189

DEL RIO LAND, INC., Appellant,

v.

Pierre H. HAUMONT, Jr., and Vernece Haumont, his wife, Appellees.

No. 1 CA–CIV 1694.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 17, 1972.

Rehearing Denied Nov. 29, 1972.

Review Granted Dec. 19, 1972.

Moeller, Jensen & Henry, by James Moeller and Michael J. LaVelle, and Rob-

bins & Francone, by Merrill W. Robbins, Phoenix, for appellant.

Cox & Cox, by L. J. Cox, Jr., Phoenix, for appellees.

STEVENS, Presiding Judge.

This appeal arises out of a summary judgment entered in the above-numbered Superior Court action. The judgment granted the plaintiffs' prayer for specific performance. The appellees were the plaintiffs and they will be referred to as the plaintiffs or as Haumont. The principal defendants in the specific performance action were the appellant, Del Rio Land, Inc., herein referred to as Del Rio and James B. Carr as well as Christopher W. Carr, herein referred to as the Carrs. The Carrs were officers of and had an interest in Del Rio.

In this appeal Del Rio urges error in the granting of motion for summary judgment and Haumont, while resisting the claim of error, urges that in the postjudgment situation this appeal has become moot.

Prior to the events which gave rise to the specific performance judgment, Del Rio owned the land in question and executed a mortgage thereon to secure a debt evidenced by a promissory note. After the execution and recording of the mortgage Del Rio sold the land here in question at a public auction which was conducted by a professional auctioneer. Haumont was apparently the successful bidder at the auction. A dispute arose between Haumont on the one hand and Del Rio as well as the Carrs on the other.

On 31 January 1969 Haumont filed the instant suit for specific performance naming Del Rio, the Carrs, and others not material to this opinion. On 15 May 1970, in a separate Superior Court action bearing cause number C–233593, Anthony P. Pilkis and others, as plaintiffs, filed a suit to foreclose the mortgage hereinbefore referred to, naming as defendants Haumont, the Carrs, Del Rio and others. On 9 September 1970 Pilkis and the other plaintiffs in the mortgage foreclosure action received their judgment of foreclosure, which also established the amount of the financial obligation of Del Rio. The foreclosure judgment contained the usual provisions for an execution sale. The records before this Court are silent as to any appeal from the foreclosure judgment and we assume that in due course it became final.

The trial court granted a Haumont motion for summary judgment and pursuant thereto a formal written judgment was filed on 19 February 1971. In pertinent part the judgment recited as follows:

"IT IS ORDERED, ADJUDGED AND DECREED:

\* \* \* \* \* \*

"2. That plaintiffs' purchase at public auction from defendants Del Rio Land, Inc., its officers, directors or owners, the following described real propety (sic) for the gross amount of $2600.00 per acre. Plaintiffs' purchase is by contract which shall provide for a 25% down-payment with the balance to be paid by one hundred (100) equal monthly installments with 7% interest amortized in said monthly installments. Said monthly installments shall begin thirty (30) days following close of escrow and shall thereafter be made on or before the same day of each month until paid with the purchasers' right to accelerate any or all payments. (description of property omitted).

"3. That defendant Del Rio Land, Inc., James B. Carr and Christopher W. Carr, President and Secretary of said corporation shall forthwith execute, acknowledge and deliver all deeds, documents, and other instruments required to complete the sale of the above described land in order to convey good and sufficient title of said land free from all encumbrances to plaintiff, to Stewart Title & Trust of Phoenix, who shall handle the escrow and collection of said sale and that defendants shall, upon close of escrow, let plaintiff into possession of the above described property.

"4. Stewart Title & Trust of Phoenix upon receipt from plaintiff of the down payment and upon receipt of all monthly payments shall apply said monies to the satisfaction of the following obligations in the following order in order to clear the title to said land:

a. Payment of Plaintiff's court costs in this action of $782.60.

b. Payment of Judgment of Foreclosure heretofore assigned to plaintiff, including interest accruing thereon.

c. Payment of all back taxes and taxes to the close of escrow including the accruing 10% interest and penalties until paid by defendant Del Rio Land, Inc.

d. Payment of any uncollected fees of Stewart Title & Trust of Phoenix assessed defendant.

e. Balance of all payments after application to above obligations to Del Rio Land, Inc."

Prior to the entry of the judgment the proposed form of judgment was served on the attorneys for Del Rio and the Carrs who filed their exceptions thereto. It is material to the holding of the majority of this Court that the objections, which were overruled by the trial court, be set forth rather fully. The objections raised the following matters.

"1. There has been no finding by the Court as set forth on page 2, commencing on line 25, that Plaintiff received an Assignment of Judgment in the consolidated case No. 233593. This matter is not a part of any evidence or pleadings in this matter and to include it herein would be bringing in matters outside the scope of the record.

\*　　\*　　\*　　\*　　\*　　\*

"3. The form of the Judgment should not include in paragraph 4, items a, b, and d.

a. Subparagraphs a and d erroneously set forth court costs and title company fees as a lien upon the land. Inasmuch as these are not a lien upon the land, Plaintiff is not entitled to have them paid first.

b. Apparently the first mortgage has already been satisfied by Plaintiff or if it hasn't, there has been a merger of interests that would entitle the Plaintiff to credit against the purchase price, but still allow Defendant Del Rio Land, Inc. to receive the 25% down and the balance in 100 installments of principal and interest. If the Court ruled otherwise, the Defendants would be forced to sell their land and not receive any payments for approximately 19 months hence.

"4. The form of Judgment should contain and set forth the complete terms of the contract, not just those favorable to the Plaintiff. This is especially true in a situation where there had never been a written contract between the parties. A few of the items that have been omitted are: whether or not the contract is assignable; whether the Defendants are entitled to attorney fees in case of a default; covenants against waste; who has the obligations for paying taxes; and what would be the Defendants' remedies on default."

Remembering that the judgment granting specific performance was filed on Friday the 19th day of February 1971, the following dates become significant:

A formal written agreement of sale between Haumont as the buyer and Del Rio as the seller was signed by the Carrs as Del Rio's corporate officers on Tuesday the 23rd day of February and by Haumont on the following day. On the 24th of February the escrow instructions were executed. It was not until the 23rd day of March 1971 that the notice of appeal on behalf of Del Rio, only, was served.

A comparison of the judgment on the one hand, with the escrow instructions and the agreement on the other, discloses:

The motion for summary judgment specified the price of $2600 per acre and prayed that the overall price be fixed in the judg-

ment in the sum of $188,006. The judgment did not fix the overall price and only established the figure of $2600 per acre. Nevertheless the agreement was in the overall sum of $200,959.20.

Objection number one urged that the record was silent as to Haumont's ownership of the mortgage foreclosure judgment and objection number 3(b) raised other issues in relation to the foreclosure judgment. Yet the agreement expressly recognized the judgment, the amount thereof, Haumont's ownership, and granted priority in the application of the proceeds of the sale.

The second paragraph of the judgment was silent as to the due date of the first and subsequent payments and the agreement was specific in this regard.

Other matters covered by objection number 3 were expressly covered by the agreement.

Objection number 4 recited that there had never been a formal agreement between the parties and recited matters which were omitted from the judgment which should be set forth in an agreement of sale. The printed form of agreement was modified by strike outs and by insertions to cover the matters which were urged in the objections to the form of the judgment.

The agreement is silent as to the seller's preservation of its right of appeal.

The record is silent as to any threatened contempt by the trial court for non-compliance with the directives contained in the judgment for specific performance. It appears to this Court that even though the trial court overruled the objections to the proposed form of the specific performance judgment, nevertheless, further clarification might be required before a contempt citation for non-compliance could be successfully urged.

We find no provision in the judgment for specific performance which directs the execution of a formal written agreement of sale, yet, such an agreement was executed.

We know not whether Haumont, the owner of the foreclosure judgment, agreed to withhold or did withhold execution under that judgment in reliance upon or in partial consideration for the execution of the agreement of specific performance.

We concur with the opinion of West v. Baker, 18 Ariz.App. 151, 152, 500 P.2d 1139, 1140 (1972), wherein it was stated that there are occasions when "it is not inappropriate for an appellate court to consider * * * extrinsic evidence as to matters which have occurred since the filing of the appeal" and which were "not part of the record on appeal."

The matters which relate to the position of mootness were presented to this Court by the plaintiffs by motion to dismiss the appeal and by their brief. The documents are not disputed but the legal effect thereof is disputed. There was no response filed to the motion to dismiss within the time allowed by the rules governing this Court and this Court took recognition of the absence of a response in its order granting the motion to dismiss. A response was filed on the same day that the order was entered. Reasonable grounds for the failure to respond at an earlier date were presented. This Court vacated its order of dismissal and did not rule on the merits of the motion at that time. This Court has not ruled upon the merits of the mootness question prior to this opinion.

██ The majority recognize that there are situations wherein an appellate court will decide a case, even though moot, where the issues presented are of great public interest. Wise v. First National Bank of Nogales, 49 Ariz. 146, 65 P.2d 1154 (1937); Board of Examiners of Plumbers v. Marchese, 49 Ariz. 350, 66 P.2d 1035 (1937); Arizona Osteopathic Medical Association v. Fridena, 105 Ariz. 291, 463 P.2d 825 (1970); and Odle v. Imperial Ice Cream Company, 11 Ariz.App. 203, 463 P.2d 98 (1970). In the opinion of the majority such is not the situation here.

The issuance of the mandate in relation to this opinion will constitute an order dismissing this appeal as being moot.

CASE, J., concurs.

EUBANK, Judge (dissenting).

I must dissent from the majority decision. It is my opinion that the appeal is not moot and that a genuine issue as to a material fact exists which precludes the summary judgment rendered by the trial court. I would reverse the summary judgment and remand the case for a trial on the merits.

An important aspect of this case is that it was disposed of by summary judgment and the appellant, Del Rio Land, Inc., on appeal is entitled to have all inferences drawn from the evidence in its favor, even as regards the question of mootness. There is no law that favors mooting a case on appeal; quite to the contrary, the law favors the disposition of appeals on their merits where possible. Burnkrant v. Saggau, 12 Ariz.App. 310, 312, 470 P.2d 115 (1970).

In Arizona a substantial body of law has developed regarding the doctrine of mootness resulting from the acts of the appellant and it appears to me that the test to be drawn from this body of case law would be that mootness results where the appellant has so substantially changed his position regarding his case that the appeals court is forced to say, "he has chosen his path, let him follow it." This is the rationale involved in accord and satisfaction or compromise and settlement resulting in mootness discussed in Moreno v. Russell, 47 Ariz. 38, 53 P.2d 411 (1936); Cano v. Arizona Frozen Products Co., 38 Ariz. 404, 300 P. 953 (1931); Little v. Brown, 40 Ariz. 206, 11 P.2d 610 (1932); Belknap v. Hunt, 20 Ariz. 148, 177 P. 932 (1919); Corbin on Contracts (1 Vol. ed. 1970) § 1278. It is also the rationale involved in the "voluntary" or "involuntary" test for mootness as discussed in Webb v. Crane Co., 52 Ariz. 299, 80 P.2d 698 (1938); 4

Am.Jur.2d, Appeal and Error, §§ 260–266; Annot. 39 A.L.R.2d 153 (1955).

The foregoing is important in my view since the record shows that the appellant was in financial distress, that it was unable to post a supersedeas bond to stay the execution of the judgment pending appeal, and that it attempted to comply with the trial court's broad judgment, which it was under legal compulsion to do, pending the determination of this matter on appeal. In addition, my review of the very broad language of the summary judgment, which requires a contract, escrow, agreement, deeds, terms of sale, payment schedule, including payment of the first mortgage which was foreclosed, etc., without setting forth the multiplicity of terms required for such transactions, reveals substantial compliance by the appellant with the judgment in the nature of the involuntary payment of a judgment. I find it impossible to place appellant's compliance under either a compromise and settlement or an accord and satisfaction relationship. The majority decision has the same problem and merely avoids it.

With these preliminary remarks out of the way, in my opinion the decision should read as follows:

This appeal by Del Rio is from a summary judgment granted in Haumont's favor ordering specific performance of the sale of Del Rio's land at an auction in which Haumont was the highest bidder. Del Rio, in essence, argues that there are "genuine issues as to any material fact" and that therefore the summary judgment must be reversed and remanded for a trial on the merits. Haumont argues that the issue is moot because of a compromise and settlement in that after the filing of summary judgment Del Rio entered into an agreement of sale for the land with Haumont and the agreement contains covenants in addition to those required by the summary judgment. In addition, Haumont argues that there are no genuine issues as to any material issue of fact.

## IS THE APPEAL MOOT?[1]

Haumont's contention of mootness is as follows:

"After the Superior Court entered its judgment, Del Rio elected not to post a supersedeas bond and entered into a signed, written agreement with Haumont whereby Del Rio sold the subject real property to Haumont. The agreement contains terms not required by the judgment of the Court (e. g., right of the prevailing party to collect attorneys' fees in any suit to enforce the agreement). The agreement contains no provision making the enforcement of the agreement in any way conditional on the outcome of this appeal. [Had Del Rio wished to make the Agreement in compliance with the Judgment or conditional upon the appeal, it easily could have done so. 4 Am.Jur. 2d, Appeal and Error, § 262:

'A defeated party's compliance with a judgment for other than the payment of money destroys his right to appeal where such compliance makes it impossible for the appellate court to grant him effective relief on the merits . . .']

"Thus regardless of the outcome of the appeal Haumont is in possession of the subject real property under a written, acknowledged and recorded agreement which is enforceable between the parties. This appeal is therefore moot."

The summary judgment ordered Del Rio to perform the following acts in relation to its real property:

"3.   That defendant Del Rio Land, Inc., James B. Carr and Christopher W. Carr, President and Secretary of said corporation shall forthwith execute, acknowledge and deliver all deeds, documents, and other instruments required to complete the sale of the above described land in order to convey good and sufficient title of said land free from all encumbrances to plaintiff, to Stewart Title & Trust of Phoenix, who shall handle the escrow and collection of said sale and that defendants shall, upon close of escrow, let plaintiff into possession of the above described property."

The judgment also provided that Haumont's purchase was to be by contract at a gross price of $2600 per acre, 25% down payment with the balance payable in 100 equal monthly installments with 7% interest included. It also provided that the monthly installments would begin 30 days following the close of escrow. In addition the judgment acknowledges that the real property is encumbered by a mortgage.

The record shows that the auction of Del Rio's land and personal property was brought on by its financial difficulties, and that following the filing of the summary judgment appealed from, Del Rio failed to file a supersedeas bond, as authorized by Rule 73(k), Rules of Civil Procedure, 16 A.R.S., in order to obtain a stay of execution of the summary judgment, which contained Rule 54(b), Rules of Civil Procedure, 16 A.R.S., language of finality. Del Rio was therefore required by law to comply with the judgment pending its appeal to this Court.

In Burnkrant v. Saggau, 12 Ariz.App. 310, 470 P.2d 115 (1970), a motion was made to dismiss the appeal on the basis of mootness since the school authorities, in compliance with the trial court's judgment and pending appeal, had readmitted the student who was suspended for smoking. We said:

"  .  .  .   The school authorities can hardly be faulted for their prompt compliance with the writ, which was their only lawful course of conduct and which accorded to Kent Saggau the fruits of his vic-

1.   This question was raised initially in this Court by a motion to dismiss. We granted the motion when Del Rio failed to respond in time. However, it appeared and moved to set the order aside show- ing good cause for its failure to respond. We reinstated the appeal. The subject is raised again in Haumont's brief like a cross-question on appeal.

tory, if upheld. Nor was it incumbent upon the school authorities to litigate in the trial court the possible ultimate effects of an appeal, if (as of that time) one were taken. Mootness generally derives from the 'abstract' or 'academic' nature of the issues presented on appeal. See 5 Am.Jur.2d Appeal and Error § 762 (1962). Appellee has not cited any authority indicating that *hardship* to the appellee renders a controversy moot.

"On the other hand, we are aware of authorities which hold, in effect, that compliance with a judgment for specific relief can defeat an appeal where the compliance is such that it would be impossible in the event of reversal to restore the status quo. See Annot. 39 A. L.R.2d 153, 183–85 (1955). If such a principle could redound to the benefit of appellee and her student son, they have not advised us of the workings of the school system and precisely how it could or should work to their benefit in this case. Where a right to appeal is given, as it is here, see A.R.S. § 12–2101, subsec. B¹, the law will seek to uphold it.

1. And see State Board of Barber Examiners v. Walker, 67 Ariz. 156, 166, 192 P.2d 723, 730 (1948).
   *Cf.* Davis v. Campbell, 24 Ariz. 77, 80, 206 P. 1078, 1079 (1922). Even if the school authorities' action in complying with the writ were inherently irreversible, we might still determine the questions raised in view of their public importance. See Wise v. First National Bank, 49 Ariz. 146, 65 P.2d 1154 (1937). . . ." (Emphasis original) (12 Ariz.App. at 312, 470 P.2d at 117).

I *reemphasize* that where a right to appeal is given the law will seek to uphold it.

It is true as Haumont contends that there are certain terms contained in the agreement that were not specifically provided for in the summary judgment. The most surprising aspect in this regard is the failure of either the escrow or agreement of sale to contain any reference to their being contingent on the outcome of Del Rio's appeal. However, while such a statement would be dispositive of the issue of mootness (Annot. 39 A.L.R.2d 153 (1955)), it is not absolutely necessary, for the question is whether a compromise and settlement or accord and satisfaction resulted from Del Rio's actions and the answer to this question is based upon the written intention of the parties expressed in the escrow and agreement as related to the requirements of the summary judgment. The construction of these writings is a question of law and not one of fact.

My review of the escrow instructions and agreement reveal complete compliance on the part of Del Rio with the demands made on it by the summary judgment. The variations between the agreement and the broad ambit of paragraph 3 of the judgment, supra. Further, there is no intention expressed anywhere in the documents to indicate an intention on the part of Del Rio to give up its appeal. In our opinion the escrow and agreement of sale constitute neither a compromise and settlement nor an accord and satisfaction. For examples of each see Moreno v. Russell, supra; Cano v. Arizona Frozen Products Co., supra; Corbin on Contracts (1 Vol. ed. 1970) § 1278, The Relation of Compromise to Accord and Satisfaction. *See also* Law Note in 13 Ariz.L.Rev. 464 (No. 2–1971) The Mootness Doctrine in a State Court, to which should be added the compromise and settlement side of the question contained in: Webb v. Crane Co., supra; Little v. Brown, supra; Belknap v. Hunt, supra; Freeman v. Wintroath Pumps, 13 Ariz.App. 182, 475 P.2d 274 (1970), and 5 Am.Jur.2d § 761 et seq. (1962).

I would hold that the appeal is not moot. In addition I see no problem in returning matters to their status quo in the event that Del Rio is eventually successful in its defense.

## SUMMARY JUDGMENT

Turning now to the summary judgment question of whether there is or is not a genuine issue as to any material fact, I am

of the opinion that there is and that the summary judgment must be reversed.

The record shows that the auction agreements between Del Rio and the auctioneer involving the land provided that the land would be sold "subject only to the existing mortgage"; that the brochure advertising the sale, which Haumont received several days before the auction, stated that the "property will be sold subject only to present small mortgage"; that Jesse J. Carr, one of the owners of Del Rio, testified in his deposition that the auctioneer conducted the auction of the land in the following manner:

"A Then he auctioned off the equipment and then they had a small break and Mr. Graham used his bullhorn, and made a resume of the property. He also speeled (sic) out the property across the river, the price it was selling for, what he thought was a fair value for the property. He also stated that 'This is subject to the mortgage like it is shown in the brochure,' and then he asked for the bids, then he followed through."

and later he testified:

"Q Did you hear Mr. Graham advise the people before the auction that the bid would be a lump sum bid per acre, for simplicity of auctioning the ground?

"A No.

"Q And your testimony, the only thing he stated to them, was that the ground would be subject to the mortgage?

"A And he give (sic) the amount of acres.

"Q Did he tell what the amount of the unpaid balance of the mortgage was?

"A He said roughly $55,000."

The plaintiff, Mr. Haumont, testified by deposition that the auctioneer had said the following:

"A Well, he said they were going to sell approximately 70 acres of land, gave a description of the boundaries, as to regard of the mortgage, he definitely stated that the bid price per acre would be the full purchase price of the property.

"Q He said nothing about, that you heard, whether or not the property was being sold subject to the existing mortgage?

"A No, sir."

Later he testified:

"Q BY MR. ROBBINS: Did you hear Mr. Graham say anything regarding whether or not the property was being sold subject to the mortgage? Were these words mentioned, do you recall these words being mentioned?

"A Yes.

"Q All right.

"MR. FLICKINGER: Just to clarify the record, you mean the words 'subject to.' Were those words used?

"A I don't know.

"Q BY MR. ROBBINS: So your answer to that last question would be you don't know, right?

"A Right.

"Q Instead of yes?

"A Yes."

Haumont testified that he thought that his bid of $2600 per acre was the full purchase price of the real property. The auctioneer, who was from Texas, testified that "subject to" meant that Del Rio would be obligated to pay the mortgage off out of the proceeds of the sale. The owners of Del Rio testified that they thought that "subject to" meant that Haumont would assume the mortgage and that consequently the sale price was $2600 per acre plus an assumption of their mortgage debt of $55,-000 plus dollars. Added to this we have the conflict in testimony by Jesse Carr and Haumont, set out above, on whether or not the sale was announced as subject to the mortgage. For some reason not clear from the record, the trial court adopted the legal conclusions of the auctioneer although Bennett v. United States Land, Title and Legacy Co., 16 Ariz. 138, 141 P. 717 (1914), and 9 Thompson on Real Property (1958 Replacement), § 4791 would seem to dictate a different result.

On review of the summary judgment we must draw all inferences that arise from the evidence in favor of the appellant Del Rio in order to determine whether granting a summary judgment was proper or not. Ong Hing v. Arizona Harness Raceway, Inc., 10 Ariz.App. 380, 459 P.2d 107 (1969). As I have demonstrated there is a clear conflict in the evidence as to what was said and what was meant by what was said at the auction. Under these circumstances we can do nothing else but reverse the summary judgment and return the matter for a trial on the issues as there are genuine issues as to a material fact presented.