427 P.2d 937

The CITY OF PHOENIX, a municipal corporation, and its Respective Officers, the Auditor of the City of Phoenix, and the Board of Trustees of the Firemen's Relief and Pension Fund, Appellants,

v.

Milton F. BOERGER, Appellee.

The BOARD OF TRUSTEES OF the FIREMEN'S RELIEF AND PENSION FUND, Appellant,

v.

The CITY OF PHOENIX, a municipal corporation, Appellee.

Nos. I CA–CIV 347, I CA–CIV 509.

Court of Appeals of Arizona.

May 15, 1967.

Rehearing Denied June 6, 1967.

Review Denied Sept. 21, 1967.

Robert J. Backstein, City Atty. of Phoenix, Dow Ben Roush and Allen L. Feinstein, Phoenix, for City of Phoenix.

James P. Cunningham, Phoenix, for Milton F. Boerger, appellee, and Board of Trustees of Firemen's Pension and Relief Fund, appellant.

STEVENS, Judge.

The Firemen's Relief and Pension Fund, hereinafter called The Fund, was created by the Arizona Legislature. Each governmental unit to which the legislation applies, including the City of Phoenix, has a separate autonomous fund. Without being specific at this point in the opinion, and speaking in general terms only, the original act specified the contributions to The Fund; the persons entitled to receive benefits from The Fund; the amounts and conditions prerequisite to the payment of these benefits; and the administration of The Fund. Various aspects of the legislation on this subject have been amended. The effect of the amendments is the basic issue before the Court.

Two separate cases were filed, tried and reduced to judgment in the Superior Court. In Cause No. 178148, Boerger was the moving party and prevailed in a trial before Judge Kenneth C. Chatwin. This action will be referred to as the "Boerger case". In Cause No. 184521, the City of Phoenix was the moving party and prevailed after trial before Judge Donald Daughton. This action will be referred to as the "Board of Trustees case". Boerger sought relief by mandamus and in the Board of Trustees case, relief was sought by certiorari. There is no issue before this Court as to the propriety of the remedy urged in the trial court. Both cases involve substantially the same questions and the two cases were consolidated on appeal.

The following Arizona Legislative Enactments and the effective dates thereof are of interest:

Chapter 86 of the Laws of 1929 became effective on 12 June 1929. This chapter was carried forward as Sections 431(a) to 431(s) in the 1934 Supplement to the 1928 Revised Code of Arizona. The same chapter is next found in the 1939 Arizona Code Annotated as Sections 16–1901 to 16–1918. In R.C.A. and A.C.A., the sequence of the statutory provisions set forth in the 1929 Enactment is maintained. The chapter now appears in the Arizona Revised Statutes (1956) as Sections 9–951 to 9–971. The present sequence of presentation does not follow the chronology found in the 1929 Enactment.

Chapter 26 of the Laws of 1941 became effective 15 June 1941.

Chapter 55 of the Laws of 1943 became effective 12 June 1943.

Chapter 62 of the Laws of 1953 became effective 29 June 1953.

The Arizona Revised Statutes became effective at 12:00 noon on 9 January 1956, as more particularly appears from Chapter 3 of the 3rd Special Session, Laws of 1955.

An act relating to pensions to police officers is found in Chapter 40 of the Laws of 1937 effective 11 June 1937. The Police Act has many distinguishing features when compared with the Firemen's Act and is important to our consideration in relation to certain legal principles enunciated by the Arizona Supreme Court on 3 June 1965, in the case of Yeazell v. Copins, 98 Ariz. 109, 402 P.2d 541.

Boerger was employed after the 1929 enactment and prior to the 1941 enactment. His brief indicates that there are other firemen whose rights are similar to his. In the Board of Trustees' decision there are 32 firemen, and the widow of a fireman who died after retirement, who are affected. All of the persons affected by the Board of Trustees' decision initially applied for and were granted retirement before the 1965 *Yeazell* decision.

The 1929 Act created the Firemen's Relief and Pension Fund. This fund is the source from which disability retirement, pension retirement and widows' benefits are paid. With certain statutory limitations, these payments are supplemental to and in addition to Workmen's Compensation benefits. Prior to the passage of the 1929 Act, the State of Arizona levied a 2% tax on fire insurance premiums. (Section 3404 of the 1913 Revised Statutes of Arizona, commonly called the 1913 Civil Code.) The concept of a public policy to provide a fund for the retirement of firemen appears to have had its legislative inception in Arizona with the adoption of Chapter 46 of the Laws of 1915. This Act amended

Section 3404 of the 1913 Civil Code. Therein it was provided:

"Fifty per cent of all moneys collected * * * shall be by the state treasurer paid over to the governing body of said city to be used for providing or maintaining a system of fire protection for said city, or for providing a relief fund for the benefit of injured or disabled firemen, either volunteer or paid."

This matter of public policy was carried forward in Section 1809 R.C.A.

Section 12 of the 1929 Act provided that the source of monies to be paid into The Fund was:

"* * * the annual tax of two per cent on all premiums collected by fire insurance companies * * *."

Section 16 of the 1929 Act transferred to The Fund all unexpended monies which had been collected pursuant to the amended Section 3404 of the 1913 Civil Code. The 1943 Act made a change in the method of computing the two per cent tax.

The 1941 Act increased the source of monies paid into The Fund. Section 10 of this Act amended Section 16–1912 A.C.A. As amended, Section 16–1912(b) required each city to:

"* * * deduct from the stipulated salaries or compensation of its firemen three and one-half per cent thereof, and * * * add the same amount from its own general revenues, and shall pay the total of the two amounts each month *into the firemen's pension and relief fund.*" (Emphasis supplied)

Note that the same fund was continued and that a new fund was not created. Subsection (c) of the same section provided that after the payroll deductions had been paid into The Fund,

"All payroll deductions * * * and in the discretion of the board of trustees such additional sums as it may deem proper, shall be set aside in a permanent reserve fund * * *."

Subsections (b) and (c) authorized the invasion of the principal of the reserve

fund only for the purpose of permitting a repayment of the percentage salary deduction if the fireman's services were terminated without his becoming eligible to receive payments from The Fund. These deductions were repaid without interest.

The 1953 Act increased the salary deductions to 5% with a corresponding increase in the matching contribution to be made by the city (Section 7 of the Act). Following the effective dates of the 1941 and the 1953 Acts, the salary deductions were made in the percentages specified by the Acts. The records in the cases before us do not disclose that any firemen whose rights are in issue, protested the deduction.

The 1953 Act made an additional substantial change in the monetary contribution to The Fund. Section 1 of the Act contained a requirement for a continuing actuarial study. The section placed an additional financial obligation upon the governmental agency, in the cases before us, the City of Phoenix, in that:

"* * * The actuary shall make specific recommendations as to the contributions to be made to the fund * * * in order to maintain the fund on an actuarially sound basis."

Under Section 4 of the 1929 Act, a fireman with 20 years of service, regardlesss of age,

"* * * may be retired and receive from such fund a monthly pension equal to one-half the salary he received preceding such retirement."

This was modified by Section 3 of the 1941 Act which required not only a minimum of 20 years of service but also a minimum age of 57 years. The computation formula was also changed to:

"* * * a monthly pension equal to one-half the average monthly salary received by him for the twelve months' period next prior to his retirement * * *. The pension shall in no event exceed one hundred fifty dollars per month."

This was again modified by Section 2 of the 1953 Act which provided:

"* * * monthly pension equal to one-half the average monthly salary received by him for the five year period next prior to his retirement * * *. The pension shall in no event exceed two hundred fifty dollars per month."

Section 17 of the 1929 Act is as follows:

"Payments to retired members shall not be less than twenty-five dollars monthly and the payment shall be made as determined by the board of trustees. Should the funds provided be insufficient to fully pay the pensions, the fund shall be pro rated among those entitled. Payment shall not be made until all claims against said fund arising under Section seven hereof have been satisfied."

The reference to Section seven is a reference to sickness and disability benefits. This section with minor changes in language has been carried forward and is now Section 9–966 A.R.S. It can be seen that since 1915, the Legislatures of Arizona have concerned themselves with retirement benefits for firemen and have been aware of the growing need for the solvency of the fund from which the retirement benefits were to be paid.

The 1929 Act places the management of The Fund in a Board of Trustees. The Board of Trustees determines the eligibility of firemen for benefits and the amount to be paid. The money in The Fund is in the custody of the City Treasurer. Based upon determinations made by the Board of Trustees, the City Auditor issues a warrant drawn against The Fund which is payable by the City Treasurer.

The 1929 Act and subsequent modifications of the Act require annual accountings of The Fund. These requirements continued and were not in any way superseded by the 1953 Act which required actuarial studies and required the governmental agency to make contributions to The Fund in accordance with actuarial recommendations. As before stated, all of the legislative

enactments recognized but one Firemen's Pension and Relief Fund. The reserve fund created by the 1941 Act is an investment adjunct to, and a part of, the one fund. The evidence discloses that it was not until after the Boerger action was commenced that any effort was made to segregate The Fund into separate accounting periods based upon the changing contributions pursuant to successive legislative enactments.

Prior to *Yeazell* it was the practice that when a fireman requested retirement, the Board of Trustees processed his retirement under the then latest statutory formula for retirement computation. *Yeazell* established the law to be that:

" * * * the pension provisions become a part of the contemplated compensation for those services, and so in a sense a party of the contract of employment itself * * *

"As a contract, certain principles of law are apparent. That the laws of the state are a part of every contract * * *. We unqualifiedly reject any premise for this decision which does not forthrightly accept as its controlling principle that the rights and responsibilities arising out of the contract of employment are not firm and binding. Controversies as to those rights should be settled consistent with the law applicable to contracts.

" * * * It is, therefore, one of the conditions of appellant's contract of employment that if he completes twenty years of service Tucson promises certain deferred payments as retirement. * * *

"That an applicant for retirement may not earn the right of benefits because he does not perform the condition does not mean that from the moment of entrance into the service of Tucson as a police officer there is not a firm, binding contract.

\* \* \* \* \* \*

"Retirement is, as in private industry, a valuable part of the consideration for the entrance into and continuation in public employment.

\* \* \* \* \* \*

" 'It has been clearly held * * * that the right to a pension becomes a vested one upon acceptance of employment by an applicant.'

\* \* \* \* \* \*

" * * * A contract cannot be unilaterally modified nor can one party to a contract alter its terms without the assent of the other party.

" * * * one party to a contract cannot by his own acts release or alter its obligations. The intention must be mutual.

\* \* \* \* \* \*

"Nor may the legislature *reduce* the amount of the contributions to the fund if thereby the soundness of the fund is jeopardized. (emphasis supplied)

" * * * Tucson now attempts to apply the changes retroactively to vary the terms of its contract with appellant. We hold the changes, if applied to appellant without his assent, would constitute an alteration, a modification of his contract. This Tucson may not do.

" * * * We do not, however, mean to imply what rights or remedies might be available to either party in a situation where it is established that a retirement plan is actuarially unsound. This is a matter beyond the issues of the present litigation. " * * * appellant had the right to rely on the terms of the legislative enactment of the Police Pension Act of 1937 as it existed at the time he entered the service of the City of Tucson and that the subsequent legislation may not be arbitrarily applied retroactively to impair the contract. Appellant's right to be retired under the Police Act of 1937 existed until he evidenced an intention to be bound by or assented to the modifications provided in the amendment of 1952. The presumption would, of course, be that until appellant exercised his right of election the 1952 amendment was acceptable to him, but once having made an

election both he and his widow are forever bound thereby.

"We do not consider that appellant can be compelled to a choice between the 1937 act or the 1952 amendment by legislative coercion. His acquiescence in the application of the 1952 amendment during his employment is not alone sufficient to establish a waiver or an estoppel of rights under the 1937 act although he is obviously estopped from being reimbursed or from withdrawing any additional contributions above the two per cent required of the 1937 act."

We will consider the Board of Trustees case, then the Boerger case.

## THE BOARD OF TRUSTEES CASE

A number of firemen had retired prior to the *Yeazell* decision and their pensions were computed based upon the 1953 Act. These firemen had commenced their employment prior to the 1941 enactment. Some of the firemen were over the age of 57 years at the time of their respective initial applications for retirement, and all but six were granted retirement pensions by reason of disability. Pensioner Benton applied for and received a disability pension in 1957 and died later the same year. Under date of 24 November 1965, his widow filed her application for a widow's pension. No application for retirement submitted prior to the rendition of the *Yeazell* decision contained an express election as to the terms of retirement or as to the legislative act pursuant to which the application was being submitted.

The only pension claim which deviates from a fairly standard pattern is the claim of Martin. On 26 July 1951, Martin, then 48 years of age, had accumulated 20 years of service and he applied for a pension equal to 50% of his monthly salary basing his request on the 1929 Act. One of the reasons that the request was refused was because he was less than 57 years of age. He filed an action in the Superior Court to compel the granting of his request. The case was not tried nor was it dismissed

although it was subject to dismissal under the Rules of Practice adopted by the Arizona Supreme Court effective 1 January 1962. Martin continued in his service to the City as a fireman until July 1957 at which time he applied for a disability retirement.

After the decision in *Yeazell*, those persons affected by the Board of Trustees case applied for a readjustment of their pension rights using a standard form of application which is as follows:

"TO: Phoenix Firemen's Relief and Pension Board

Gentlemen:

"I have been advised of a change of the law regarding my pension received due to my employment with the City of Phoenix. I was hired by the City of Phoenix Fire Department prior to June 15, 1941 and it is my understanding that I am entitled to pension benefits as stated in the Firemen's Pension and Relief Act of 1929.

"I, therefore, make request upon you to recompute my pension consistent with the benefits of the 1929 Act, that is, for one-half salary at the time of retirement, and all retroactive benefits to which I am entitled from date of retirement to date.

"Dated this _____ day of _____ 1965.
Sincerely yours,"

On 3 January 1966, the Board of Trustees approved each of the applications for readjustment. In each instance the amount of the pension was increased. The City filed the action in question seeking an adjudication that the action by the Board of Trustees was contrary to law.

The testimony of the auditor in the Board of Trustees case was similar to the auditor's testimony presented in the Boerger case. The auditor testified that in reaching his conclusion that The Fund, insofar as it was available for pre-1941 firemen, was exhausted, he had pro rated the two per cent fire insurance premium contribution and the interest received from the reserve

fund. He estimated that by limiting the pre-1941 firemen's pension rights to this pro rated source of payment, the 1965–66 deficit would be approximately $600,000. He further testified that the unfunded liability for firemen was less than the unfunded liability for policemen and that the overall condition of the fund for the firemen was good. The auditor admitted that he was not a qualified actuary and that he could not testify as an actuary.

Charles Bentzin testified. He is a qualified actuary, and is the actuary for The Fund as well as for at least ten other funds including the fund for policemen.

He stated that an unfunded liability is present in practically all funds with which he is familiar. He explained two terms used in actuarial studies of funds. The first is "normal cost" which is,

"the cost which would have arisen under a pension plan had the plan always been in effect, and had the 'normal cost' always been paid."

The other is "unfunded liability" which,

"is liability covering years in which no contribution, 'normal costs' were made, or contributions less than a 'normal cost' were made but for which benefits are provided."

Bentzin answered in the affirmative to the following question:

"Q And the actuary, as the actuary of the Firemen's Fund, is its present status sound from an actuarial point of view?"

The evidence brought out that the actuarial report and recommendations for the year 1964 were based upon a maximum pension of $250 a month pursuant to the 1953 Act. Other than the 5% salary deduction which by law was placed in the reserve fund, the sources of the money which entered the fund and were available for pension benefits were interest from the reserve fund; the 2% fire insurance tax contribution which amounted to 5.4% of the salaries paid to firemen; the statutory city contribution of a matching 5%; and a sum paid by the City based upon the ac-

tuary's recommendation which was 2.41% of salary. The purpose of the 2.41% contribution was to amortize the unfunded liability over a thirty year period. The evidence disclosed that to permit the fund to make payments to pre-1941 firemen computed on the 1929 statutory basis, would require an increase in the contribution by the City by an amount equal to a .14% of salary per year over a thirty-five year period. In response to the question,

"* * * could this Fund pay these benefits to the prospectively benefited people under the 1929 law without getting into a state of insolvency of the Fund or of exhaustion?"

Bentzin stated:

"A Providing that the City and firemen continued to make the contributions as required."

We find the further question and answer:

"Q And does the projection of the Fund for the future, taking into consideration the possible payment of this, of these increased amounts here, look good from an actuarial point of view?

"A The Fund would be actuarially sound."

We agree with Bentzin in his testimony that:

"* * * I don't recall ever reading any mention of unfunded liability in the law. There was a requirement the actuarial, the actuary determine the amount that was required, in effect, to provide the benefits. * * *"

Bentzin's testimony further disclosed that the granting of pensions on the basis of the 1929 Act to pre-1941 firemen would increase the unfunded liability by $900,000. The increase would be retired by the adjustment upward of fourteen hundredths of one percent of salary for an additional five years. The unfunded liability is considerably less than a safe amount.

■ Pursuant to Rule 52(a), Rules of Civil Procedure, 16 A.R.S., a timely re-

quest was made for findings of fact and conclusions of law. The rule provides in part:

* \* \* \* \* \*

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. \* \* \*"

The trial court entered the following Findings of Fact:

"1. On January 3, 1966, respondent Board of Trustees of the Firemen's Relief and Pension Fund in the City of Phoenix, State of Arizona, made a decision whereby it awarded increased benefits under the Firemen's Relief and Pension Fund to thirty-two retired firemen and the widow of a deceased retired fireman, such increased benefits being computed and awarded, both retroactively and prospectively, in accordance with the provisions of Arizona laws 1929, chapter 86.

"2. The thirty-two retired firemen and the deceased husband of the widow commenced service with the fire department of the City of Phoenix at various times prior to 1941 and retired at various times after 1941 ranging from 1944 to 1963.

"3. Since the date of retirement each of the thirty-two firemen, and since the death of her husband, the widow, have accepted and received benefits from the Firemen's Relief and Pension Fund computed in accordance not with laws 1929, chapter 86, but with the law in effect on the date of retirement; that is, either Arizona laws 1941, chapter 26, or Arizona laws 1953, chapter 62.

"4. The Firemen's Relief and Pension Fund in the City of Phoenix, as created by laws 1929, chapter 86, was, prior to the enactment of laws 1941, chapter 26, actuarially unsound.

"5. The modifications to the Firemen's Relief and Pension Fund in the City of Phoenix, as enacted by laws 1941, chapter 26, and laws 1953, chapter 62, in each instance were reasonable, were required by the actuarial unsoundness of the Fund as created by laws 1929, chapter 86, and improved the Fund and placed it on a sound actuarial basis.

"6. The advantages to prospective pensioners of the Firemen's Relief and Pension Fund as contained in the amendments enacted by laws 1941, chapter 26 and laws 1953, chapter 62, in each case more than offset any disadvantages caused by such amendments to prospective pensioners.

"7. The actions of the thirty-two firemen and the widow, in applying for and accepting retirement benefits from the Firemen's Relief and Pension Fund in accordance with either the amendment enacted by laws 1941, chapter 26, or laws 1953, chapter 62, whichever was in effect at the time of retirement, and in accepting payments under such amendment of the Fund constitutes on the part of each a waiver of any right to take benefits under the Fund as enacted by laws 1929, chapter 86, and each of the thirty-two firemen and the widow is now estopped from making claim for benefits under such 1929 act."

And, the following Conclusions of Law:

"1. The Firemen's Relief and Pension Fund in the City of Phoenix, as enacted by Arizona laws 1929, chapter 86, was subject to reasonable modification by the legislature of the State of Arizona.

"2. The modifications to the Firemen's Relief and Pension Fund as enacted by the legislature of the State of Arizona in laws 1941, chapter 26 and laws 1953, chapter 62, were in each instance reasonable, valid and legally binding on the Fund and prospective pensioners of the Fund.

"3. The thirty-two firemen and the widow have waived any right to take pension benefits under the Fund as enacted by laws 1929, chapter 86 and are estopped from claiming benefits under the 1929 act.

"4. The thirty-two firemen and the widow are entitled to benefits under the Firemen's Relief and Pension Fund not as computed in accordance with laws 1929, chapter 86, but as computed in accordance with the law in effect on the date of retirement; namely, either Arizona laws 1941, chapter 26, or Arizona laws 1953, chapter 62.

"5. The decision made by respondent on January 3, 1966, is contrary to law and was made in excess of respondent's jurisdiction."

■ We hold that the evidence does not support Findings No. 6 or 7. There was a common misunderstanding as to the true interpretation of the law prior to the Supreme Court's decision in *Yeazell*. The pensioners applied for their pension without specifying the particular legislative act which they deemed to be applicable. There was no affirmative election until the above quoted letters requesting readjustment. Had Martin pursued his lawsuit and been unsuccessful or had he then terminated his employment, we might be faced with a different legal problem. Martin retained his employment. He abandoned his effort to retire under the 20 year provisions of the act and continued his employment. Later he successfully sought retirement by reason of disability. We hold that his 1951 attempt to receive retirement benefits did not preclude him from again urging the application of the 1929 law.

## THE BOERGER CASE

Boerger was employed as a fireman on 1 April 1933. At the age of 61 years and in October of 1964, he terminated his employment. He made his first application for a pension under date of 30 June 1965. The Board of Trustees fixed his pension in the sum of $315 per month based upon the 1929 method of computation. The City of Phoenix declined to issue warrants for any sum in excess of $250 per month being the sum specified in the 1953 act. Boerger testified that he had not been contacted by an official in relation to the change. He sought to mandamus the issuance of payments in the sum of $315 per month.

In the Boerger suit, the City alleged, as it did in the later Board of Trustees suit, that The Fund created by the 1929 Act had become exhausted. We do not find that the City urges that Boerger is not entitled to any pension. Actuarial evidence was not presented in the Boerger trial. The testimony of the auditor was similar to the auditor's testimony in the Board of Trustees case. In fact, portions of the exhibits used in the Boerger case were also used in the Board of Trustees case. The Board of Trustees case testimony was more complete in that therein we find the testimony of the actuary. The auditor testified that the latest audit disclosed current assets in The Fund in excess of five million dollars, unfunded liabilities of approximately two million dollars, a solvent fund, and that there were sufficient monies in the fund out of which Boerger and those similarly situated could be paid based upon the 1929 method of computation. The auditor testified that insofar as pre-1941 employees are concerned, there was a deficit in The Fund, which as early as 1959, was approximately $90,000.

It was not until the Boerger suit, and in preparation for testimony in that suit, that any audit had been conducted with the idea of establishing any arbitrary segment or division of The Fund. Judge Chatwin ruled that the matter of the actuarial soundness of The Fund was not before him and he sustained Boerger's position. The appeal followed.

## THE HOLDING

■ *Yeazell* holds that a pensioner's entitlement to benefits may not be reduced below those which are provided by law at the time of the commencement of employment. We hold that the employees cannot be deemed to have elected to come under the provisions of later enactments by virtue of the fact that first 3½% and later 5% of their salaries were contributed to the reserve fund. By their compliance with the statute requiring such contribution, they

augmented the fund but did not thereby waive their rights under the 1929 Act. They did not thereby elect to come under any later act.

The legislative history discloses governmental concern for the pension rights of firemen. As time passed and as greater experience was gained, the soundness of The Fund was a matter of legislative concern. This is evidenced by the increased contributions based upon actuarial study. Section 17 of the 1929 Act, now Section 9–966 A.R.S., is still the law. This section does not say "do not pay unless The Fund is actuarially sound". It does say, "pay so long as there is money with which to pay and pro rate as necessary". The obligation to keep The Fund sound is not that of the firemen, it is the obligation of the City and the testimony reflects that the City is creditably performing its responsibilities.

Conclusion of Law No. 5 in the Board of Trustees case is disapproved. The 3 January 1966 action of the Board of Trustees approving a readjustment of the pension request based upon the formula contained in the 1929 Act was proper and within its jurisdiction.

The judgment in Maricopa County Cause No. 184521 (1 CA–CIV 509, Board of Trustees) is reversed with directions to dismiss the petition for writ of certiorari.

The judgment in Maricopa County Cause No. 178148 (1 CA–CIV 347, Boerger) is affirmed.

The directives contained in this opinion will become effective upon the issuance of the mandate by this Court.

CAMERON, C. J., and W. E. PATTERSON, Superior Court Judge, concur.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from the consideration of this matter, Superior Court Judge W. E. PATTERSON was called to sit in his stead and participate in the determination of this cause.