27 Ariz. App. 534 (1976)
556 P.2d 1137
Harold BENNETT ex rel. ARIZONA STATE PERSONNEL COMMISSION, State of Arizona, Appellant,
v.
Caron BEARD, Appellee.
No. 1 CA-CIV 2929.
Court of Appeals of Arizona, Division 1, Department B.
September 28, 1976.
Rehearing Denied November 9, 1976.
Petition for Review Denied December 7, 1976.
Bruce E. Babbitt, Atty. Gen. by Peter C. Gulatto, Asst. Atty. Gen., Phoenix, for appellant.
Machmer, Schlosser & Meitz, Ltd. by Robert H. Schlosser, Phoenix, for appellee.
OPINION
JACOBSON, Judge.
Is the annual leave policy adopted by a state agency for its public employees part of the employees' "contract of employment" thus giving rise to "vested rights" so as not to be subject to future change by the state? This is the question presented by this appeal.
This question arose out of a special action instituted by appellee, Caron Beard, an employee of the Arizona Highway Department, against the Director of the Arizona State Personnel Commission,[1] seeking to *535 declare that the commission was without authority to reduce the rate of his annual leave accrual benefit. On the basis of stipulated facts and cross motions for summary judgment, the trial court entered judgment for the appellee, holding that the commission's action in reducing appellee's annual leave was void as a matter of law. The commission has appealed.
The facts, as stipulated by the parties, are as follows. On August 8, 1968, appellee was offered a job as a Senior Architect I by the Arizona Highway Department. At this time, appellee was employed in Idaho and upon acceptance of the Highway Department's offer, appellee resigned his job in Idaho and moved his family to Arizona.
Appellee's employment with the Arizona Highway Department commenced on January 1, 1969, and he has been continuously employed by that department since that date.
At the time the offer of employment was made and accepted, employees of the Arizona Highway Department were not covered by the Arizona Merit System (A.R.S. § 38-901, et seq.[2]), since this act did not apply to them until January 1, 1969. Prior to the date of the Personnel Commission Act, a state agency could exercise administrative discretion in establishing annual leave policies. The Arizona Highway Department had done so, by adopting an administrative policy which provided, insofar as annual leave was concerned that:
"Annual leave is earned at the rate of 12 hours (1 1/2 days) for each month worked, making it possible for an employee to earn eighteen (18) annual leave days each year."
This leave policy was included in a manual which was sent to appellee prior to his acceptance of employment. It was stipulated that appellee's acceptance of employment was based in part on this leave policy. The leave policy had not been adopted by the commission as a rule or regulation.
In 1968, the legislature created the "Arizona State Personnel Commission" and vested this agency with power and authority over state employees, including hiring procedures and leave benefits. As this newly created state agency was unable to immediately implement its authority, leave policies previously adopted by state agencies were allowed to continue in force until the commission acted.
During 1969, the commission adopted leave benefit rules to be effective January 1, 1970. These rules provided that if a state employee was accruing annual leave benefits at a higher rate than was provided for under the commission rules, then that employee would continue to accrue the higher rate until his length of service under the new rules allowed him a leave benefit equal or more beneficial than the old rate of accrual or until January 1, 1973.
In December, 1972, the commission considered a request to extend the deadline for accruing leave benefits past the cut-off date of January 1, 1973. This request was denied. Thus, on January 1, 1973, appellee, under the new Personnel Commission rules would start to accrue annual leave at the rate of 10 hours per month as compared to the old accrual rate of 12 hours per month, the end result being that appellee would be entitled to 15 days annual leave rather than the 18 days annual leave he enjoyed prior to January 1, 1973.
Appellee's theory both in the trial court and on appeal is that a contractual relationship was established between himself and the state upon his acceptance of employment in 1968. One of the provisions of that contract was the right to receive annual leave benefits at a stated rate and that this contract provision cannot be unilaterally changed by the state without his permission. This contract theory has its genesis in Yeazell v. Copins, 98 Ariz. 109, *536 402 P.2d 541 (1965) which was followed in City of Phoenix v. Boerger, 5 Ariz. App. 445, 427 P.2d 937 (1967).
Both of these cases involved changes in pension plans adopted by the state legislature. In Yeazell, the court was considering the factual situation of an employee of the Tucson Police Department who, after 20 years of service, sought retirement benefits. At the time of his employment, pension benefits under a 1937 legislative act were computed on the basis of 1/2 the average monthly compensation for one year prior to the date of retirement. In 1952, the legislature amended the 1937 act and provided that pensions would be computed on the basis of 1/2 the average monthly earnings for five years immediately prior to the date of retirement. The result was that if the employee's pension was based upon the 1952 amendment he would receive $7.21 a month less than if computed under the 1937 act.
The Yeazell court first faced the problem of determining the nature of pension benefits generally, that is, whether they were a gratuity from the state which created no vested rights in the recipient and which could then be withheld or changed by the state at its whim or whether these were vested rights in the nature of deferred compensation.
Because of the Arizona constitutional provision against the granting of a gratuity (Article 9, § 7, 1 A.R.S.) the court came down hard on the side of those cases which held that:
"[W]here, as here, services are rendered under such a pension statute, the pension provisions become a part of the contemplated compensation for those services, and so in a sense a part of the contract of employment itself." (Quoting from O'Dea v. Cook, 176 Cal. 659, 169 P. 366 (1917).) (citation omitted).
The court then held that the right to a specific retirement benefit became vested at the time the employee complied with the conditions precedent to the vesting of that benefit  in that case, completion of 20 years of service. The court then went on to hold that the legislature could not retroactively impair those vested rights by changing the basis upon which the retirement benefit was computed. Substantially the same result was reached in City of Phoenix v. Boerger, supra.
Appellee argues that Yeazell is controlling here. We agree, insofar as the benefits acquired by the appellee are vested, that is, he has fulfilled the conditions precedent required by his contract of employment to receive that benefit. This in turn requires an analysis of the benefit (annual leave) claimed to have become vested. It is clear that under the 1968 Arizona Highway Department policy on leave benefits, that such a benefit was "annual"  yearly computed  and was based upon a calendar year computation, as the policy limited carry-over vacation benefits to 30 days at the "beginning of the calendar year." Thus, the appellee on December 31, 1969, having completed one year of service and having complied with the conditions precedent set forth in his contract of employment had vested rights in 18 days of leave. This benefit being vested could not, under Yeazell, have been forfeited or changed by either the Highway Department or the Personnel Commission.
However, in this case, we are not dealing with the retroactive impairment of vested rights, we are concerned with the power to make contracts for future employment. Thus, the appellee does not seriously argue that on January 1, 1970, the state would have breached its employment contract by terminating him on that date, it being tacitly conceded that the appellee has no property right to continue public employment, and his contract of employment was not for a stated period in excess of one year. See, Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Dixon v. Osman, 22 Ariz. App. 430, 528 P.2d 181 (1974).
The state having the right to take the most drastic step involved with appellee's "contract of employment"  termination *537  without liability, may the state without liability take the less drastic step of changing the terms of appellee's future employment by way of compensation, that is, benefits? The answer is obviously yes, provided that the change does not impair rights vested by reason of the prior employment. Yeazell v. Copins, supra.
Under this analysis, the commission could not, say in July, 1969, pass a rule that provided that retroactive to January 1, 1969, appellee's leave benefits would be computed at a rate less than was previously in effect from January 1, 1969 to July, 1969. Such a result is prohibited by Yeazell as affecting benefits vested by reason of appellee's compliance with the conditions precedent to earning those benefits  his continued employment during that period.
This does not mean, however, that the commission could not likewise in July, 1969, pass a rule that provided as a condition of future employment, that leave benefits could not be computed on a basis different from that in effect for the prior six months.
It must be remembered that appellee had no written contract of employment for a stated period of time, or a fixed rate of compensation. His employment in this sense was, prior to the enactment of the merit system, at the whim of his employer and at a rate of compensation fixed by his employer. What in essence occurred on January 1, 1973, when the rule as to appellee's leave benefits became effective, was that the state offered to the appellee a new contract of employment based upon new terms and conditions concerning future leave benefits. Thus the state had the right to do, as the appellee had no continuing rights either to employment or compensation under his old contract of employment. The appellee, at this point, could have either accepted or rejected the state's offer under the new terms. By continuing his employment, he must be deemed to have accepted the new offer. Malcoff v. Coyier, 14 Ariz. App. 524, 484 P.2d 1053 (1971).
We do not have the situation touched upon in Yeazell that continued employment after the 1952 amendment to the pension act should not be construed as a waiver of his right to retirement benefits under the 1937 act. As previously pointed out, Yeazell dealt with the attempted retroactive change of previously vested contractual rights. Here, we are dealing with future benefits as yet unvested.
We emphasize that appellee makes no contention that the new personnel rules affect any leave benefits he has accrued by reason of his prior service. Rather, he is arguing that he has a contractual right to continue his past leave benefits into future employment. We hold he has no such right, in absence of a formal written contract, setting forth that right, or a statute giving such a right, neither of which are present in this case.
The appellee also makes an argument as to administrative conduct based upon facts not contained in the stipulation of facts signed by the parties. We are bound by the facts presented to the trial court by way of stipulation and therefore do not consider this argument. Gangadean v. Flori Investment Co., 106 Ariz. 245, 474 P.2d 1006 (1970). Likewise, we do not reach the other arguments raised by the commission including the applicability of the statute of limitations.
The judgment of the trial court is reversed and the matter remanded with directions to enter judgment in favor of the appellants.
SCHROEDER, P.J., and WREN, J., concur.
NOTES
[1] Now known as the Arizona State Personnel Board.
[2] The statutes under which the merit system operates have been reenacted as A.R.S. §§ 41-761 et seq. and 41-781, et seq.